IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GUS HARMOUCHE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-3698 |
| | § | |
| CONSULATE GENERAL OF THE STATE OF QATAR, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Gus Harmouche, ("Harmouche" or "Plaintiff") brings this action against defendant Consulate General of the State of Qatar ("Consulate General" or "Defendant") asserting claims for age and religious discrimination under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act.[1] Pending before the court is The Consulate General of the State of Qatar's Motion to Dismiss Plaintiff's Complaint ("Defendant's Motion to Dismiss") (Docket Entry No. 12). For the reasons stated below, Defendant's Motion to Dismiss will be denied.

### I. Factual and Procedural Background

Plaintiff began working for the Defendant in 1997 as a public relations manager.[2] During his 19 years of employment Plaintiff

---

[1]See Plaintiff's Complaint ("Complaint"), Docket Entry No. 1.

[2]Complaint, Docket Entry No. 1, p. 3 ¶ 10.

worked for six Consul Generals and multiple Vice Consuls.³ As public relations manager he drafted press releases, planned community events, and performed other administrative tasks.⁴ Plaintiff alleges that in 2013 or 2014 the Consul General, Mohammed Al-Homaid, changed Plaintiff's job duties from public relations tasks to "answering the phone, being a backup driver sometimes, opening the office door for him, opening the car door for him, making copies, and serving coffee."⁵ Plaintiff states that Al-Homaid told Plaintiff that he was too old for the job and that another employee unofficially assumed Plaintiff's public relations duties.⁶ The Vice Consul of the Consulate General of the State of Qatar, Khaled Al Sulaiti, states that the Consul General did not change Plaintiff's job duties but that his duties "were only those duties necessary to fulfilling his job responsibilities as the Public Relations Manager."⁷ Plaintiff also alleges that Mr. Al-Homaid repeatedly harassed Plaintiff about his age and his

---

³Affidavit of Gus Harmouche ("Harmouche Affidavit"), Exhibit 1 to Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Complaint ("Plaintiff's Response"), Docket Entry No. 13-1, p. 1 ¶¶ 2, 6.

⁴Complaint, Docket Entry No. 1, p. 3 ¶ 10.

⁵Harmouche Affidavit, Exhibit 1 to Plaintiff's Response, Docket Entry No. 13-1, p. 1 ¶ 6.

⁶Complaint, Docket Entry No. 1, p. 3 ¶ 11.

⁷Declaration of Khaled Al Sulaiti ("Al Sulaiti Declaration"), Supplement to The Consulate General of the State of Qatar's Reply in Support of its Motion to Dismiss Plaintiff's Complaint ("Defendant's Reply") (Docket Entry No. 15), Docket Entry No. 16, p. 1 ¶ 3.

religion when he refused to participate in Muslim prayers.[8] Plaintiff alleges that when he was terminated from employment in June of 2016, Mr. Al-Homaid "directly stated that it was because of Plaintiff's age."[9]

Plaintiff filed this action on December 6, 2017, and Defendant filed its Motion to Dismiss on April 30, 3018. Plaintiff filed a response to Defendant's motion in which he attaches his affidavit.[10] Defendant filed a reply and a competing affidavit by Mr. Al Sulaiti.[11]

## II. Standard of Review

Defendant filed its Motion to Dismiss "[p]ursuant to Federal Rule of Civil Procedure 12(b)(2)" arguing that the court lacks personal jurisdiction over Defendant, the Consulate General.[12] However, because Defendant argues that it is immune from the court's jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), the substance of Defendant's argument raises a question under Rule 12(b)(1), dismissal for lack of subject matter

---

[8]Complaint, Docket Entry No. 1, pp. 3-4 ¶¶ 12, 13.

[9]Id. at 4 ¶ 15.

[10]See Plaintiff's Response, Docket Entry No. 13; Harmouche Affidavit, Exhibit 1 to Plaintiff's Response, Docket Entry No. 13-1.

[11]See Defendant's Reply, Docket Entry No. 15; Al Sulaiti Declaration, Supplement to Defendant's Reply, Docket Entry No. 16.

[12]Defendant's Motion to Dismiss, Docket Entry No. 12, p. 1.

jurisdiction. The court therefore will analyze Defendant's motion under the Rule 12(b)(1) standard.

A. Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Insurance Company of America, 114 S. Ct. 1673, 1675 (1994). A party may assert the defense of lack of subject matter jurisdiction in a Rule 12(b)(1) motion. "'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.'" Home Builders Association of Mississippi, Inc. v. City of Madison, Mississippi, 143 F.3d 1006, 1010 (5th Cir. 1998). The burden of establishing federal jurisdiction rests with the party asserting its existence. DaimlerChrysler Corp. v. Cuno, 126 S. Ct. 1854, 1861 n.3 (2006).

"Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Clark v. Tarrant County, Texas, 798 F.2d 736, 741 (5th Cir. 1986). Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: "facial" attacks and "factual" attacks. See Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981). A facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence that challenges the court's jurisdiction based solely on the pleadings. Id. A factual

-4-

attack challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings -- such as testimony and affidavits -- may be considered. Id. Because the parties have each submitted evidence outside the pleadings, the Defendant's Motion to Dismiss is a factual attack, and the court will consider the evidence in the record, resolving any disputed facts.

B. **Foreign Sovereign Immunities Act**

The FSIA provides "the sole basis for obtaining jurisdiction over a foreign state in [United States] courts." Argentine Republic v. Amerada Hess Shipping Corp., 109 S. Ct. 683, 688 (1989). Under the FSIA "a foreign state shall be immune from the jurisdiction of the courts of the United States" with certain enumerated exceptions. 28 U.S.C. § 1604. "The foreign state bears the burden of persuasion on the issue of immunity under the FSIA, but once a *prima facie* showing of immunity has been made, the plaintiff seeking to litigate in the district court bears the burden of coming forward with facts showing that an exception applies." Moran v. Kingdom of Saudi Arabia, 27 F.3d 169, 172 (5th Cir. 1994).

### III. Analysis

The parties do not dispute that Defendant is a "foreign state" under Section 1603 of the FSIA.[13] Plaintiff argues that Defendant

---

[13]See Plaintiff's Response, Docket Entry No. 13, p. 2 ("Plaintiff does not disagree that the Consulate General is a foreign state under the FSIA.").

is not immune under the FSIA because the "commercial activity" exception applies.[14] Section 1605(a)(2) states that a "foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state . . . ." 28 U.S.C. § 1605(a)(2); Argentine Republic, 109 S. Ct. at 691. The activity must also have "a jurisdictional nexus with the United States, as defined by the FSIA." Can-Am International, LLC v. Republic of Trinidad and Tobago, 169 F. App'x 396, 404 (5th Cir. 2006). Because all of the relevant activity occurred in the United States and because the parties do not dispute that the activity has the requisite jurisdictional nexus with the United States, the court must determine only whether the activity is commercial or governmental in nature.

The legislative history states that "courts would have a great deal of latitude in determining what is a 'commercial activity' for purposes of this bill." H.R. Rep. 94-1487, at *16 (1976). It also provides examples of governmental and commercial activities:

> [P]ublic or governmental and not commercial in nature, would be the employment of diplomatic, civil service, or military personnel, but not the employment of American citizens or third country nationals by the foreign state in the United States.
>
> . . .
>
> Activities such as a foreign government's . . . employment or engagement of laborers, clerical staff or

---

[14] Id. at 2-6.

> public relations or marketing agents, . . . would be among those included within the definition [of "commercial activity"].

Id. Whether an employee of a foreign state is a civil servant is relevant in determining whether the commercial activity exception applies, but circuit courts have employed different approaches to the analysis and give different weight to the employee's civil servant status. See, e.g., El-Hadad v. United Arab Emirates, 496 F.3d 658, 664 (D.C. Cir. 2007) (citations omitted) ("[L]ike many of our sister circuits, we have held that a foreign government's civil servants . . . do *not* qualify for the commercial activity exception."). Although the Fifth Circuit has not ruled on this issue, courts in this district have followed the D.C. Circuit's analysis of civil-servant status. Lian Ming Lee v. Taipei Economic and Cultural Representative Office, Civil Action No. 4:09-0024, 2010 WL 786612 at *2 (S.D. Tex. March 5, 2010) (Ellison, J.) (reconsidered on other grounds). The analysis follows a two-step approach: (1) if the plaintiff is a civil servant, the court's analysis stops because the foreign state is immune from suit; (2) if the plaintiff is not a civil servant, the court will determine whether the plaintiff's work was commercial in nature. El-Hadad, 496 F.3d at 664 (citing Saudi Arabia v. Nelson, 113 S. Ct. 1471, 1479 (1993)).

A. **Civil Servant**

The FSIA and its legislative history do not define "civil service" and circuit courts recognize the risks in borrowing the

United States' notion of a civil servant. See, e.g., El-Hadad, 496 F.3d at 664-65 (Because of the "dangers in borrowing or analogizing to get [a definition] . . . [w]e therefore take a flexible and inclusive approach"); Kato v. Ishihara, 360 F.3d 106, 113 (2d Cir. 2004) ("Other countries are free to structure employment relationships in ways that do not mimic civil service protections now common to the United States and many European states, without thereby sacrificing the immunity conferred by the FSIA, as long as the sovereign, by extending the employment, is engaging in 'governmental' rather than 'commercial' activity."). The burden of proof is on the foreign state defendant to show that the plaintiff was employed as a civil servant under the foreign state's law. El-Hadad, 496 F.3d at 666; Lee, 2010 WL 786612 at *2.

Defendant provides the Al Sulaiti Declaration as evidence to support its Motion to Dismiss. The Al Sulaiti Declaration states "Plaintiff Harmouche was considered a civil servant by the State of Qatar."[15] Defendant does not support this conclusory statement with any evidence of Qatari law. Moreover, Plaintiff is not a citizen of Qatar and states that he was not a civil servant of Qatar.[16] The court concludes that Defendant has not met its burden to show that Plaintiff was a civil servant. Therefore, the court must decide whether Plaintiff's work was commercial in nature.

---

[15]Al Sulaiti Declaration, Docket Entry No. 16, p. 1 ¶ 3.

[16]Harmouche Affidavit, Docket Entry No. 13-1, p. 1 ¶¶ 3, 5.

B.  Nature of the Activity

In deciding whether Plaintiff's duties are commercial or governmental in nature, the ultimate question is whether Plaintiff's job responsibilities "involved the exercise of 'powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns.'" El-Hadad, 496 F.3d at 667 (quoting Saudi Arabia, 113 S. Ct. at 1479). "One distinctive mark of governmental work is discretionary involvement with sovereign law or policy." Id. at 668. "The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d). The reason that a foreign state undertakes the activity alleged to be commercial is irrelevant. Republic of Argentina v. Weltover, Inc., 112 S. Ct. 2160, 2167 (1992). The court may look "only to the resemblance between 'the outward form' of his conduct and powers and those of private citizens." El-Hadad, 496 F.3d at 668 (citing Republic of Argentina, 112 S. Ct. at 2167).

Defendant argues that "because the Consulate General is a foreign sovereign whose inherent functions are purely governmental, and because the purpose of Plaintiff's job responsibilities were to further that purely governmental purpose, the commercial activity exception does not apply."[17] But the FSIA explicitly prohibits

---

[17]Defendant's Reply, Docket Entry No. 15, p. 2.

reference to the purpose of the relevant conduct. 28 U.S.C. § 1603(d); see also Lee, 2010 WL 786612 at *7 (rejecting the same argument by the foreign state).

Defendant also argues that Plaintiff's job duties were not commercial in nature.[18] Although the legislative history to Section 1605 of the FSIA includes employment of public relations agents in its definition of "commercial activity" and states that the employment of American citizens is not governmental in nature, H.R. Rep. 94-1487 at *16, Defendant urges the court to use its "great deal of latitude in determining what is a 'commercial activity'" to reject Plaintiff's argument.[19] Defendant argues that because Plaintiff has presented no evidence of his job duties as public relations manager, he has not supported his burden to show that an exception to the FSIA applies.[20]

Plaintiff is a United States citizen who worked for the Consulate General as a public relations manager.[21] See H.R. Rep. 94-1487 at *16. As a public relations manager Plaintiff drafted press releases and planned events.[22] Some of Plaintiff's job duties included answering the telephone, driving a car, opening doors,

---

[18]Id. at 4.

[19]Id. at 4-5.

[20]Id. at 5.

[21]Harmouche Affidavit, Exhibit 1 to Plaintiff's Response, Docket Entry No. 13-1, p. 1.

[22]Complaint, Docket Entry No. 1, p. 3.

making copies, and serving coffee.[23] Even if Plaintiff's job duties included other tasks such as "assisting Qatari delegation in Houston, mak[ing] hotel reservations, supervis[ing] purchases, organizing events, assisting diplomats, and emergency protocol during natural disasters,"[24] none of those tasks involve sovereign law or policy but instead are consistent with a public relations manager's duties in the private commercial world. See Lee, 2010 WL 786612 at *7. Defendant presents no evidence that Plaintiff had any role in the creation of governmental policy and to the extent Plaintiff carried out government policy, his tasks were not discretionary. See El-Hadad, 496 F.3d at 668. The court concludes that Plaintiff has met his burden of establishing that his employment with Defendant falls under the FSIA's commercial activity exception.

## IV. Conclusions and Order

For the reasons explained above, The Consulate General of the State of Qatar's Motion to Dismiss Plaintiff's Complaint (Docket Entry No. 12) is **DENIED**.

**SIGNED** at Houston, Texas, on this the 12th day of June, 2018.

SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[23]Harmouche Affidavit, Exhibit 1 to Plaintiff's Response, Docket Entry No. 13-1, p. 1.

[24]Al Sulaiti Declaration, Docket Entry No. 16, p. 2.